DEREK SMITH LAW GROUP, PLLC
CAROLINE H. MILLER, ESQUIRE
Attorney ID No. 321420
1628 Pine Street
Philadelphia, PA 19103
P: (786) 292-7605
E: caroline@dereksmithlaw.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MONICA ELDER, | |
| Plaintiff, | |
| -against- | Civil Action No. _____ |
| | |
| FISHER AUTO PARTS, INC.; and MICHELLE HOWER, *individually*, | PLAINTIFF DEMANDS A TRIAL BY JURY |
| Defendants. | |
| --------------------------------------------------X | |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, MONICA ELDER, (hereinafter referred to as "Plaintiff" and/or "Ms. Elder"), by and through Plaintiff's attorneys, DEREK SMITH LAW GROUP, PLLC, as and for Plaintiff's Complaint in this action against Defendant FISHER AUTO PARTS, INC. (hereinafter referred to as "Defendant Fisher"), and Defendant MICHELLE HOWER, *in her individual and official capacity* (hereinafter referred to as "Defendant Hower") (collectively hereinafter referred to as "Defendants") upon both information and belief, alleges as follows:

## NATURE OF THE ACTION

1.    At its heart, this case is about a woman whose exceptional intelligence, qualifications, and unwavering work ethic should have secured her success and respect in her profession. Instead, she became the target of relentless discrimination, retaliation, and hostility because of her racial identity. Despite her proven capabilities and dedication, she was subjected to unfair treatment and the incident use of deplorable racial slurs directed at her. Her dignity was systematically stripped away by an employer who chose prejudice over fairness. This is not merely a case of workplace misconduct—this is a grave injustice, a violation of her fundamental rights, and an abuse of power that robbed her of the professional respect and basic human decency she so rightly deserved.

2.    This is an action for damages and other relief pursuant to 42 U.S.C. §1981 ("Section 1981") and seeks damages to redress the injuries Plaintiff has suffered as a result of being subjected to discrimination, retaliation, and wrongful termination (constructive discharge)by the aforementioned Defendants because of her race and for Defendants' wrongful actions against Plaintiff leading up to, and including, her unlawful termination (constructive discharge).

3.    Plaintiff Elder seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation

costs, and pre- and post- judgment interest as remedies for Defendants' violations of her rights.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

5.      This Court has jurisdiction in that this action involves a Federal Question under 42 U.S.C. § 1981.

6.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

7.      Venue is proper in the Middle District of Pennsylvania based upon Defendants' residency and that a substantial part of the events or omissions giving

rise to the claims occurred within Philadelphia County in the Commonwealth of Pennsylvania in the Middle District of Pennsylvania. 28 U.S.C. § 1391(b).

## PARTIES

8.     Plaintiff Monica Elder (hereinafter referred to as Plaintiff and/or "ELDER") is an individual Black/African American female who is a resident of the County of Cumberland within the Commonwealth of Pennsylvania.

9.     At all times material, Defendant Fisher Auto Parts, Inc. (hereinafter referred to as Defendant and/or "FISHER") was and is a foreign business corporation organized and existing under the laws of the Commonwealth of Virginia with its principal place of business in Staunton, VA, and duly registered to conduct business in the Commonwealth of Pennsylvania.

10.     At all times material, Defendant FISHER conducted business within the Commonwealth of Pennsylvania at a facility located at 116 East Allen Street, Mechanicsburg, PA, 17055 (hereinafter referred to as the "Mechanicsburg Facility").

11.     Defendant FISHER are a "person" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e(b).

12.     At all relevant times, Defendant FISHER has been continuously doing business across the Commonwealth of Pennsylvania and has continuously held at least 15 employees for all relevant calendar years. *42 U.S.C. § 2000e(b).*

13.    Defendant FISHER's exact number of employees is unknown to Plaintiff, but upon information and belief, there are well more employees than the statutory minimum.

14.    At all times material, Defendant Michelle Hower (hereinafter referred to as "Defendant HOWER") was and still is employed for Defendant Fisher as a "Supervisor."

15.    At all times material hereto, Defendant HOWER is believed to be an individual white/Caucasian female believed to be residing within the Commonwealth of Pennsylvania.

16.    At all times material, Defendant HOWER had supervisory authority over Plaintiff, including but not limited to the ability to change Plaintiff's hours, work assignments, work schedule, and work location, as well as the ability to, whether directly or through recommendation, hire and/or fire Plaintiff.

17.    Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendant's agent, and has carried out a joint scheme, enterprise, business plan, or policy in all respects pertinent hereto. The acts of each Defendant are therefore legally attributable to the other Defendant(s).

18.    Defendants are jointly and severally liable for the unlawful conduct and damages to Plaintiff.

## MATERIAL FACTS

19.    In or around 2016, Defendant FISHER hired Plaintiff Elder as a "Lead Picker," specifically for their Mechanicsburg Facility.

20.    Shortly after Plaintiff ELDER began her employment at the Mechanicsburg Facility, her co-workers began subjecting her to frequent and debilitating racial harassment.

21.    To be clear, and in no uncertain terms, Defendant FISHER's employees purposefully and targeted Plaintiff ELDER solely because she is Black/African American.

22.    At the time of Plaintiff ELDER's hire, and continuing until approximately 2019, Defendant FISHER did not maintain a Human Resources department or designated Human Resources employee at the Mechanicsburg Facility.

23.    While there was no Human Resources department within Defendant's structure at this time to which to report, Plaintiff nevertheless repeatedly attempted to report the ongoing harassing comments to Management, expressing her discomfort and distain for the comments, in an attempt to get the harassment to cease.

24.    Despite her clear and express reports of racial harassment, Defendant FISHER failed to investigate Plaintiff ELDER's complaints.

25.     Upon information and belief, Defendant FISHER failed to take any form of corrective action to address Plaintiff's complaint, further permitting the harassment to escalate.

26.     In 2018, following the first election of President Donald Trump, the deplorable harassment targeting Ms. Elder only escalated.

27.     By means of example and in no way meant to be an exhaustive list, Plaintiff's co-workers would regularly, open and brazenly use the word "Nigger" in and around Plaintiff's presence, knowing that Defendant FISHER would not take any action to prevent this conduct.

28.     To be clear, this was not a one-off incident but occurred near daily.

29.     Each time Plaintiff Elder heard the word, she would panic and become overwhelmed, disturbed by the free use and openness with one of, if not, the most disparaging word known to man.

30.     Furthermore, as Defendant FISHER's employees openly used racial slurs, the many managers and supervisory staff on-site at the Mechanicsburg Facility failed to intervene, let alone suggest the employees refrain from using racial slurs.

31.     Not a single employee seemed to care about Plaintiff or her dignity while working.

32.    Accordingly, the odious harassment prepared by Plaintiff's coworkers continued unabated for years, despite Plaintiff doing her best to ignore and report the incidents.

33.    In or around November 2022, the harassment by Defendant FISHER's employees again increased.

34.    In or around late November 2022, Plaintiff's coworkers began to purposefully single Plaintiff Elder out for wearing a Red Hat, almost exclusively referring to her as "Aunt Jemima," and stating that she looked "ghetto."

35.    For context, "Aunt Jemima" was part of the Quaker Oats/PepsiCo Inc. former syrup branding, which was replaced and redesigned in June 2020 following public backlash over the original name and imagery being based in racial stereotypes stemming from slavery and the "mammy" archetype.[1]

36.    On yet another occasion, while observed wearing a long blue coat at the Mechanicsburg Facility, Plaintiff's co-worker told her in no-uncertain terms that she "looked like [she] just got out of jail." Plaintiff Elder was humiliated.

37.    At or around that same time, Plaintiff's coworkers unabashedly began discussing the "ghetto Wal-Mart" in town and making comments about "the rowdy niggers in there."

---

[1] Aunt Jemima Brand Renamed Pearl Milling Company, Retiring Racist Stereotype : NPR

38.    Yet another coworker even so much as directly stated to Plaintiff "this is how niggers dress." Despite this comment being made in the presence of at least one Supervisor, no action was taken to reprimand Plaintiff's co-worker, let alone take future corrective action.

39.    Even still, despite the clear futility, Plaintiff reported the offensive comments to her Supervisor and merely asked that the coworker apologize. Despite her reasonable request, nothing was done by Defendant FISHER.

40.    Following the continued escalation of the harassing comments, and her continued reporting of the same, Plaintiff's coworkers began taking even further retaliatory actions with the express purpose of making Plaintiff Elder uncomfortable at work, including but not limited to trashing her work area when Plaintiff was not present.

41.    Again, when Plaintiff reported the actions to her supervisors, she ignored Plaintiff Elder again.

42.    The near daily harassment continued to escalate well throughout 2022 and 2023, never addressed by Defendant FISHER, let alone stopped.

43.    In or around July 2023, a coworker walked up to Plaintiff and asked, "would it be wrong if I called you a nigger?"

44.    Plaintiff ELDER was floored by even the brazen nature of the request. It was obvious to Plaintiff that the environment around her was so hostile that it was understood that calling Plaintiff a "nigger" was wholly permissible.

45.    Plaintiff Elder ultimately attempted to escalate her complaints directly to Defendant FISHER's Vice-President, Rick Maynard. Yet despite this effort, the harassment and use of racial slurs persisted.

46.    On or around July 11, 2023, Defendant FISHER constructively discharged Plaintiff ELDER. Defendant FISHER made conditions so onerous, abusive, and intolerable for Plaintiff that no Black/African American employee in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff choice to resign was void of choice or free will.

47.    On or around July 11, 2023, Defendant FISHER wrongfully and unlawfully terminated Plaintiff ELDER. Defendant FISHER wrongfully terminated Plaintiff ELDER because of her race/color. Defendant FISHER further wrongfully and unlawfully terminated Plaintiff Elder because of her repeated complaints of unlawful conduct by Defendant FISHER's employees.

48.    The above are just some of the examples of the unlawful discrimination to which the Defendants subjected Plaintiff on a frequent and ongoing basis throughout Plaintiff's employment.

49.    Defendants exhibited and continued to exhibit a continuous practice of discrimination and hostility directed at Plaintiff as a Black/African American individual over the course of many years, and Plaintiff therefore makes all claims herein under the continuing violations doctrine.

50.    Upon information and belief, Defendants' discrimination will continue after the date of the instant claim. Plaintiff hereby makes a claim for all continuing and future discrimination, including but not limited to interference with potential future employment via negative reviews/referrals.

51.    Plaintiff alleges that Defendant violated 42 U.S.C. §1981 ("Section 1981").

52.    Defendants exhibited a pattern and practice of discrimination, particularly but not solely limited to its unlawful treatment of employees both based on their race/color as well as in retaliation to claims of discrimination.

53.    As a result of Defendants' collective and individual actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54.    At all times material hereto, Defendant FISHER's supervisors and management acted with deliberate indifference to the discriminatory treatment, hostile work environment complained of herein.

55.     Plaintiff respectfully seeks all available damages including but not limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and liquidated damages, jointly and solely, as against the Defendants.

56.     Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

57.     As a result of Defendants' respective and collective unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, compensatory damages, and continues to suffer same. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

58.     That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

59.     Defendants' respective and collective conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law.

60.     Defendants are either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

## COUNT I
## DISCRIMINATION - DISPARATE TREATMENT
## UNDER 42 U.S.C SECTION 1981

61.     Plaintiff Monica Elder incorporates the allegations of all preceding

paragraphs as though fully set forth herein.

62.     Section 1981 prohibits race discrimination in the making and

enforcing of contracts. 42 U.S.C. §1981.

63.     42 U.S.C. § 1981 states in relevant part as follows:

(a) Statement of equal rights: All persons within the jurisdiction of the
United States shall have the same right in every State and Territory to make
and enforce contracts, to sue, be parties, give evidence, and to the full and
equal benefit of all laws and proceedings for the security of persons and
property as is enjoyed by white citizens, and shall be subject to like
punishment, pains, penalties, taxes, licenses, and exactions of every kind,
and to no other. (b) "Make and enforce contracts" defined: For purposes of
this section, the term "make and enforce contracts" includes the making,
performance, modification, and termination of contracts, and the enjoyment
of all benefits, privileges, terms, and conditions of the contractual
relationship.

64.     Under Section 1981 both employers and individual employees can be

liable for discrimination in employment. See Cardenas v. Massey, 269 F.3d 251,

268 (3d Cir. 2001) ("Although claims against individual supervisors are not

permitted under Title VII, this court has found individual liability under § 1981

when [the defendants] intentionally cause an infringement of rights protected by

Section 1981, regardless of whether the [employer] may also be held liable.") Al-

Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d Cir. 1986 ("employees of

a corporation may become personably liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.")

65.    Defendants violated Section 1981 by intentionally discriminating against the Plaintiff in a serious tangible way with respect to her compensation, terms, conditions, and/or privileges of employment.

66.    Plaintiff's protected characteristic (race/color) was a determinative or motivating factor in Defendants' employment actions.

67.    Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiffs are pretextual and can readily be disbelieved.

68.    Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may have also motivated Defendants' actions against Plaintiff.

69.    Defendants acted with the intent to discriminate.

70.    Defendants acted upon a continuing course of conduct.

71.    Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

72.     As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

73.     Plaintiff respectfully seeks all available damages including but not limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and liquidated damages, jointly and solely, as against the Defendants.

74.     As a result of Defendants' respective and collective unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, compensatory damages, and continues to suffer same. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

75.     That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

76.     Defendants' respective and collective conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law, warranting the imposition of punitive damages in addition to compensatory damages.

77.     Defendants are either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

78.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law

79.     Plaintiff also claims unlawful retaliation under 42 U.S.C. § 1981 for her opposition to Defendants' unlawful employment practices.

## COUNT II
## DISCRIMINATION - HOSTILE WORK ENVIRONMENT
## UNDER 42 U.S.C. SECTION 1981

80.     Plaintiff Monica Elder incorporates the allegations of all preceding paragraphs as though fully set forth herein.

81.     The standards for a hostile work environment claim are identical under Title VII and Section 1981. While the standards of liability are identical under Title VII and Section 1981, there is a major difference in the coverage of the two provisions: under Title VII, only employers can be liable for discrimination in employment, but under Section 1981, individuals, including other employees, can be liable for racial discrimination against an employee.

82.     Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

83.     Defendants' conduct was not welcomed by Plaintiff.

84.     Defendants' conduct was so severe and/or pervasive that a reasonable person in Plaintiff's positions would find the work environment to be hostile or abusive.

85.     Plaintiff was subject to derogatory comments motivated by racial prejudice on a regular and frequent basis.

86.     Plaintiff believed her work environment was hostile and abusive as a result of Defendants' conduct.

87.     As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status.

88.     Plaintiff was a victim of a system that did not respect her racial identity.

89.     Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a

claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

90.    Defendants acted upon a continuing course of conduct.

91.    As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

92.    Plaintiff respectfully seeks all available damages including but not limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and liquidated damages, jointly and solely, as against the Defendants.

93.    As a result of Defendants' respective and collective unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, compensatory damages, and continues to suffer same. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

94.     That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

95.     Defendants' respective and collective conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law, warranting the imposition of punitive damages in addition to compensatory damages.

96.     Defendants are either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

97.     Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law.

## COUNT III
## RETALIATION
## UNDER 42 U.S.C. SECTION 1981

98.     Plaintiff Monica Elder incorporates the allegations of all preceding paragraphs as though fully set forth herein.

99.     The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

100.    The legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. The most common activities protected from retaliation under Section 1981 and Title VII are:

(1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981.

101.   Here, Defendants retaliated against Plaintiff because of her repeated protected activity under Section 1981.

102.   Plaintiff was subjected to a retaliatory hostile work environment because she engaged in protected activity by opposing the harassment.

103.   Plaintiff was acting under a reasonable, good faith belief that her, or someone else's, right to be free from discrimination on the basis of race was violated.

104.   Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

105.   There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

106.   Defendants acted upon a continuing course of conduct. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between his protected activity and Defendants' actions taken against his, such as the usually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of his protected activity.

107.   As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

108.   Plaintiff respectfully seeks all available damages including but not limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and liquidated damages, jointly and solely, as against the Defendants.

109.   As a result of Defendants' respective and collective unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within the company, compensatory damages, and continues to suffer same. The Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

110.   That as a result of Defendants' conduct, the Plaintiff was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

111.   Defendants' respective and collective conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law, warranting the imposition of punitive damages in addition to compensatory damages.

112.   Defendants are either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

113.   Plaintiff further requests that his attorney's fees and costs be awarded as permitted by law

## INJURY AND DAMAGES

As a result of the abhorrent acts and conduct complained of herein, Plaintiff Elder has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest,

including, but not limited to, all compensatory damages, emotional distress,

punitive damages, liquidated damages, statutory damages, attorneys' fees and

costs, and disbursements of action; and for such other relief as the Court deems just

and proper.

Dated: <u>July 11, 2025</u>                           **DEREK SMITH LAW GROUP, PLLC**
                                                        *Counsel for Plaintiff*

                                                        <u>  /s/ Caroline H. Miller                    </u>
                                                        Caroline H. Miller, Esquire
                                                        1628 Pine Street,
                                                        Philadelphia, Pennsylvania 19103
                                                        Tel: (786) 292-7605
                                                        Fax: (305) 503-6741
                                                        E-Mail: Caroline@dereksmithlaw.com